Last morning, with the Madison County Transit, who's first? Council? Mr. Roddick, I'm pleased to report, my name is John Poppa. I represent the Madison County Mass Transit District. The district is a public agency which provides public transportation to the citizens of Madison County, primarily. Over the years, it has also partnered with the Metro East Park and Recreation District to develop and maintain a system of off-road dedicated paths and trails to rival any in North America. The United States Congress passed the Rails to Trails legislation some years ago to encourage such trail programs, and Madison County Transit has developed their trail network in part with the use of that legislation. Illinois has also encouraged the development of this type of off-road trail system, and in the Madison County Transit legislation, the state legislature included the power of eminent domain to be used for the public purposes that the district engages in. An attempt to use that power is what brings us to the court this morning. Now, would you say Illinois has the power of eminent domain, state or federal? State. State, that's what I thought. The Rails to Trails legislation, Judge, is not an eminent domain thing. If there's an abandoned rail line, the agency can make an application to take possession of that rail line unless it's needed by the government in the future. So they use the abandoned rail lines for trail purposes in that manner. After a failed attempt to obtain portions of tracts of land owned by the two defendants, in this case the Palettis, I'll refer to them jointly, through good faith negotiations as provided by the Eminent Domain Act, the transit agency filed condemnation actions against these two defendant Palettis. The Palettis filed their answers and pleadings to the Eminent Domain actions, and they sought in their pleadings to traverse and to dismiss the complaint. Importantly, they did not seek or ask for any fees or costs to be reimbursed to them at that point in time. Associate Judge in Madison County, Clarence Harrison, conducted the trial of this matter and took the matter under advisement. He also heard companion cases, the Younger and Torres cases, which are also pending before this court with related and common issues to what we're going to talk about today. Those matters have not been set for argument, I don't believe. Judge Harrison crafted an order granting the Palettis their motion to dismiss on only one of the multiple bases or grounds that they alleged. His order was entered on November the 10th, 2011. Madison County Transit had filed a complaint that included the legal description for the entire parcel of land owned by the respective Palettis, not just the portion of the parcel that was being sought for the trail. Judge Harrison dismissed the actions on this point and this point alone, even though there was no evidence that the Palettis ever thought that the entire parcel of ground was being sought by the transit agency. The Palettis, in fact, had received detailed information which clearly indicated the portions of their parcels which were being sought. Judge Harrison apparently did not instruct the clerk to provide copies of his decision to the parties upon the filing of the same. Did the clerk get the order? Apparently, the clerk received the order. There's still no mystery as to how this all transpired. Which clerk are we talking about? Madison County Clerk. The Circuit Clerk? The Circuit Clerk. And while I'm not absolutely certain, Judge, I believe Judge Harrison wrote one order for all four cases. November. In November. Yeah. Because the cases were generally held, the testimony was taken generally about the same time in all four of the cases. The order may have only been placed in one of the files, of the four separate files that were pending. And that may have been part of the problem. What we also believe is that Judge Harrison did not instruct the clerk to send copies of the orders to the parties. Well, he wouldn't have to do that, would he? He wouldn't have to do that, correct. But oftentimes that is done, and oftentimes the parties receive copies of the orders in the mail. Generally, you write them. Did the order have all the case numbers on it? I believe it did. So, okay. Four separate cases. Four separate cases, correct. Approximately six months passed before the order became known to the parties. Just to one of them? They get an order just to one of them? I think we found out independently of getting the order in the mail, we discovered that an order had been entered. To all four? Well, Do you know of a couple? We all knew the information. We were all talking amongst ourselves for six months as to whether we were going to get an order and when. Because the transit agency wanted to proceed with the project, so it was important for the transit agency to try to find out when the order was entered. And we had been inquiring, and I believe the defendants had also been inquiring. But on June 29, 2012 is the date that the Palais filed their request with the court to seek attorney's fees pursuant to the Eminent Domain Act and the provision that allows for a party who has successfully challenged an eminent domain action to receive fees and costs related to their defense. The fee petition was heard by a circuit judge, Barbara Crowder, in 2012. Even though Madison County Transit had argued that she had no jurisdiction at that time, she found that she had the discretion and the authority to rule on the petition. She supported her decision to award the fees by citing the case of Libertyville v. Town of Waukegan, a second district case. And interestingly enough, that was a case that neither Madison County Transit or the Palais had submitted to her as authority for any position. She filed the case on her own. We would submit to the court that Judge Crowder's analysis and the rationale that she used through the Libertyville case were wrong. And that is clearly evidenced by the Supreme Court decision in the Department of Professional Regulation v. Rodriguez, which we presented to the court, a decision that was not issued until after Judge Crowder had considered it and made her ruling. But that Rodriguez case is certainly applicable to this particular action for a statutory claim, a statutorily based claim for fees. Statutes of that type, which give the right to seek fees, must be strictly construed by this court, in part, I believe, because the right to get fees is not generally recognized as common law. Also, the Eminent Domain Act and the provisions of the Eminent Domain Act, which include the right to get fees, must also be strictly construed because of the nature of property taking that is part and parcel of that legislation. While the instant facts of this case make a strict construction of those provisions seem harsh, it's actually not. And I'll explain that the Blades, in this matter, had ample opportunities to protect their interest for the fees. They vigorously resisted the good faith negotiations that the Transit District attempted to enter into. It's my understanding that they never even hired an appraiser to challenge or determine whether the appraisal that was done by the Transit District was reasonable or not. They vigorously pursued dismissal of the case. And, believe me, they publicly assured the Transit District that its pleadings were defective. So they knew from the get-go that they had a good basis, they felt, a good basis to challenge the action. Yet they didn't seek to file for any fees, or the right to file for any fees. They never filed a petition once the court took the case under advisement. They never filed anything until after seven months or so had passed, and then they filed a request for fees. The Rodriguez case establishes that the requirement that a request for fees must be made in the case pending while the trial court maintains jurisdiction. Filing anything after 30 days of the order violates that provision and also violates the provision of rescue to cop. The defendants have offered no explanation or reason for not taking the fees any earlier. They presented no evidence of any particular due diligence on their part to explain why they didn't do that. There is no evidence or affidavit to support any relief pursuant to 735 ILCS 5-2-1401, which is absolutely required that an affidavit must support a 1401 petition. Judge Crowder did not have the discretion in this case to establish the deadline for filing a fee petition. Requests for fees are not a collateral matter for the Rodriguez case, which would allow the trial court to retain indefinite jurisdiction to hear it. The Transit District, had it become aware of the order, certainly would have challenged the propriety of Judge Harrison's order on the merits of the case. We believe that there was sufficient information given to the Palettis to advise them as to what parcel of ground or parcels of ground were being sought by the Transit District. But because we didn't exercise sufficient due diligence, if you will, to keep track of what the judge had done and when the order had been entered, once 30 days elapsed after that date in November, we had no way to challenge the propriety of the court's order. Likewise, this court should apply Rodriguez and the rationales of Rodriguez to the facts of this case and prohibit any claim for fees to be brought more than 30 days because the trial court no longer had jurisdiction to make that determination. And there's no basis and no case cited that provides that authority. Since the defendants did not exercise due diligence to protect their statutory rights and remedies, it is not inequitable or unfair to strictly construe the statutes and enforce the law as we have suggested in our presentation. If there are any questions. I think there was a Granite City Moose case or something that way back when that set this out, part of your argument. Did you research that case? I have a vague recollection. I've heard the Granite City Moose case cited on many occasions. Okay. Well, I was wondering if that was why it wasn't in here. No, I don't think that has any particular applicability from what I remember about, vague memory I have about that case. Okay. With this matter. Counsel, sir. Good morning. Good morning. My name is Joe Hill. And this is kind of an interesting case from my perspective because I've handled Emmett Dwayne cases for the state of Illinois primarily, I'd say about 99% of the time. Since Neil Harding was Attorney General, continues for all the Attorney Generals since. And it's kind of interesting because here I'm on the opposite side of the state. So it makes it kind of interesting. I think the first thing I think we need to understand, I don't want to just deal with what I said in the brief or what he said in the brief. Is I think the Emmett Dwayne statute is unique. It's different than the Rodriguez case. It's different in the sense that the whole reason for the Emmett Dwayne statute is based in Illinois state constitutional law. Because the state is trying to acquire somebody's property. Okay. And the reason we have the statute allows for fees is if they don't succeed or they abandon it, it's obvious that the property owner would have incurred expenses. And it costs about litigation expenses, costs, and fees. And it is unique. It's interesting when I was doing research for this, there's a case as an example that says that the jury in an Emmett Dwayne case where there's a jury in the man sets the interest amount. I have never seen a jury set an interest amount in an Emmett Dwayne case in my life. As a practical matter, the reason is because in most of the state's cases when you deal with Emmett Dwayne and there's an avert, there's an avert. The property owner is going to get $100,000. Okay. And if there in particular is quick pay, then they get money if there's a difference and it goes back and so forth. And the other thing you don't know is when you get the verdict, you don't know when the state's going to have the warrant to pay it to you, which you've got to deposit in the trade results. So as a practical matter, you set a date by agreement in every case that I've had over 20 years by agreement that we're going to pay interest at some point in time on this award in the future. And many times that's more than 30 days because you can't get the money depending on when it came in, depending on the appropriation, all different kinds of reasons. I've had cases where we had to agree on an interest figure and payment of the award as much as 70 days out. So I think it's unique. And it's unique in that that's a situation where we're trying to protect the property owner. Now, in this case, everybody agrees nobody knew that this judgment had been in, number one. Number two, as a practical matter, I called Mr. Pop and told him I found out before he did. As a practical matter, there's some things in this case that kind of leaves us in limbo because with this large project, I'm certain that the transit authority is going to come back and try to get the property and do some of the things properly. The thing that concerns me about this case in another sense is that – and I try to agree. I try to point out some ways that the property owner would be deprived of the right to seek attorney fees under certain circumstances. And I think you should. I think one of the big problems with the statute is that it says if the state can't take it or the state doesn't do this or the state doesn't do this, that the defendant must apply for attorney fees. Why should the defendant have to apply? In any case, if he's entitled to it, wouldn't he apply for it? Why shouldn't it just be part of the judge's order that we're going to have to agree on attorney fees? We wouldn't have had this problem if it was in there or required. But we're required – the defendant's required to apply. Why should the defendant have to apply? He's been deprived of his property by the state because they made him spend money out here for this, this, this, and this. And then he decided not to pursue the thing, and he has to apply to get attorney fees. I think the order of dismissal, which is one of the case situations where you could have it, it ought to say, or if they abandon it. If the state was in and said we want to voluntarily dismiss it, we've figured out it's going to cost us too much, the order ought to have to say that you get attorney fees. Now, one of the things that bothers me very much in this case, and quite frankly, after I was reading the Rodriguez case and coming back and some other things, is that in this case, the judge, Harris, in his order, and if you look at his order, it's in plaintiff's brief, and the order specifically says, in Harris, in Judge Harris's original order, it says, in the first paragraph, the court conducting respective hearings about cases, the evidence, exhibits, does finding issues in favor of the defense against the plaintiff. Madison County Criminal Authority has an inadequate description of the case. But here's the point. All other claims of error raised to each individual traverse were denied, which means that everything else, that everybody brought up in that case was denied, except for this one derivation. The problem with that is, if you look at the record, the case was decided on November 10, 2011, and I filed a supplemental memorandum to the court on November 15, 2011, which the judge never disposed of. It's not been disposed of now. So I don't know whether or not everything we raised before is res judicata, or things that I filed afterward is not res judicata, or what. I don't know that answer. And that's the reason that… What happened to the judge? He didn't do anything? He didn't do anything. It's in the record. Call him, or it's in the letter, or… Well, my friend, I think John and I may have both asked the judge if he made a decision in this case, and he was busy and went off. I know that happened to me. But I mean, I know Judge Harris is a good judge. I have no problem whatsoever. The other thing is, and so understanding that there might be a question of the 30-day issue, we filed a petition for relief under 5214-01. Now, they've attacked that on several bases. One of them is they said we didn't have an affidavit in the record on page C114 is my affidavit, because right after I list all my attorney fees and so forth, I put an affidavit that said all the things that I've said before plus everything in the attorney fee list is accurate. And the reason I think there's – and I think the judge understood that. I think that it was her determination as to whether or not there had been a finding of due diligence. It was her determination as to whether we had met the statutory requirements of 14-01. And I believe we have, because I think, quite frankly, what we're talking about here, the right to fees and right to attorney fees, was never litigated in the original case. So I don't know whether or not that case could be used as residue to cut it in this particular case. But as a practical matter, you have – there are – in evident domain cases, after there's a jury verdict or after there's a verdict, there are a number of things done on a regular basis as custom and practice in this state to do different things. There's a whole line of cases. As an example, back in the Lee case, one of the Lee cases was the Keller case, which I didn't cite but illustrate. But 255 was built. There was a number of cases there. Those were all taken by quick take, the cases for 255. At that time, a number of those cases, after the verdict was in and after the state was willing to pay, there were numerous hearings as to the amount of interest to be awarded in those cases, because at that time, the statute provided for 6 percent, but the normal customary interest rate was 12, 11, 13 percent. I personally was now involved in several cases, one in front of Judge Day, who was the Associate Judge of Madison County, dealing with HOP, which ended up being 11.5 percent interest rate. And that was – those proceedings were all well beyond the 30-day period of time. And there has never been a – so it wasn't by the original judgment. These are things that were brought up after the original judgment and not necessarily within 30 days. So I think the statute, in trying to protect an individual who's having his property taken, it provides reasons where you can get attorney fees. And I think to hold a standard that, first of all, that the defendant who has defended his right to hold on to his property has to apply for is one, I think, that's the problem. Let me ask you a question. Yes, sir. The November the 10th – Correct. – the order at that time – Correct. – signed with Judge Harrison. Correct. That was in the case or in the file, right? Correct. And was it stamped on the same day? I think so, yes, sir. But it's in the file, though. Correct. But a real simple answer to the court is – But your office didn't look for the file? Well, at some point in time you start looking, yes. But, I mean, you know, it was a situation that – The other side – They were a little more anxious than we were. Right. But I think that the other key – and the key to the court – what the court could do in this case is that we filed a supplemental memorandum raising some different issues. And the difference is this. We all filed memorandums before we had a hearing. We give the judge some insight on that. After the hearing, I filed a supplemental memorandum raising some of the issues of the testimony in the hearing. The judge had already made his decision before he got that and never did anymore. So there's a question right there that I think – did we really have a final order at that point? Maybe we didn't. So it's a very interesting case, but I think that Judge Crowder had the discretion to do what she did, and I think she did it perfectly. Thank you. Thanks, Dan. With all due respect, Your Honor, much of what Mr. Hill has presented to the court today should have been made a part of an affidavit and submitted in support of his 1401 petition. He didn't put any of this – I mean, he's coming here and making these statements about supplemental memorandums and whatever. That's not in any part of this record anywhere. Now, I don't doubt that he may have done that, but if the order has already been entered, the clock is beginning to run. And it appears to me that this is a clear example of a failure to exercise due diligence. Maybe it was understandable given the circumstances, but we've not been given any information upon which to base that decision. That's under oath and a part of this record. Unfortunately, the rules mean something, and you are supposed to follow the rules. We just can't come and make blanket claims and presentations to the court without having some support under oath or in the record to make these allegations and these claims. He is not able to distinguish the Rodriguez case from this matter. The fact that he's had other cases in eminent domain in which the courts retained some jurisdiction well beyond the 30 days, that, from what I gather in listening to what he's saying, although this is the first I've heard of it, that would be what the court talks about in Rodriguez as a collateral issue, something that is carried on by the trial court even after the order has been entered to carry on the business that's been incurred. Rodriguez specifically says the failure to file a petition for fees within the 30 days is not a collateral issue. The request for fees is not a collateral issue, and that's the Supreme Court of this state, and I think this court has an obligation to follow the directions in that case. Yes, it may be a harsh decision. He won a ruling from Judge Harris. He did incur fees. We didn't challenge the amount of fees he's charging. I still don't challenge the amount of fees that he's charging. But we, as officers of the court, have the responsibility to exercise due diligence on the part of our clients. The fact that he doesn't get the fees from me, he doesn't have to collect them from his client. He didn't do his job the way he was supposed to do his job. It's up to he and his client. But it is not something that the transit authority is responsible for under the law, and we would strenuously take that position for this court. We believe that we did our jobs the way we were supposed to. We disagree with Judge Harris's decision, but because of the strict construction that needs to take place in these kinds of matters, we couldn't challenge that decision, and we have to live with that. But we do not have to live with paying fees in a matter which was not properly preserved by the client or by the client's counsel. That's what we're asking for relief from in this matter. Thank you. Thank you, Bill. This is Thorne. Back to you, Kent. I'll see you at 1 o'clock this afternoon.